MOORE, Judge.
Joseph Edward McCarron III (“the former husband”) appeals from a judgment finding him in contempt of court for his failure to pay periodic alimony to Jerry Ann McCarron (“the former wife”) and his failure to pay certain monetary property-settlement amounts imposed on him by the parties’ divorce judgment. We reverse.

Background

This is the second time these parties have been before this court. See McCarron v. McCarron, 168 So.3d 68, 75 (Ala.Civ. App.2014). The Baldwin Circuit Court (“the trial court”) entered a judgment divorcing the parties on November 25, 2013, which it amended on February 6, 2014. The former husband appealed that judgment, and, on appeal, this court determined that the former husband did not have the ability to pay the monetary amounts awarded in the property settlement in the time and in the manner ordered. We instructed the trial court to clarify its determination of the former husband’s net monthly income, and we “reverse[d] that portion of the judgment awarding the [former] wife $10,000 per month in periodic alimony so that the trial court [could] reconsider its award in light of any modification of the judgment it makes to enable the [former] husband to pay the property settlement.” 168 So.3d at 75.
Meanwhile, on February 14, 2014, the former wife filed a petition for a rule nisi, alleging that the former husband had failed to pay the monthly periodic alimony awarded to her and had failed to pay all %he monetary property-settlement amounts he was ordered to pay in the divorce judgment. The former husband answered the petition on April 25, 2014, amended his *24 answer on that same date, and amended his answer again on April 29, 2014. After conducting a hearing on the petition, at which it received testimony from the former husband, the former wife, the former husband’s brother, who was the former husband’s business partner, the former husband’s banker, and the former husband’s real-estate broker, the trial court entered an order on July 31, 2014, stating:
“This matter having come before this Court on a Petition for Rule Nisi filed by the [former wife] and the Court having taken testimony and reviewed evidence; it is hereby
“ORDERED that the [former husband] is in contempt of this Court for willful failure to comply with the Final Decree as previously ordered. Although the case is on appeal, [the former husband] has not filed a supersedeas bond, therefore, the decree is in force and effect.
“In order to purge himself from contempt, the [former husband] shall do 2 things:
“1. Within 60 days, present to the Court a plan for complying with the outstanding obligations as the property division as set out in the Final Decree. Once the Court receives the [former husband’s] proposal, the Court will enter a Final Order as to the Rule Nisi/Contempt action.
“2. In order to immediately stay any contempt order, the [former husband] shall immediately begin paying the $10,000.00 monthly alimony obligation beginning August 1, 2014. So long as [the former husband] complies with this obligation, the contempt shall be stayed until the.. Court determines if the [formerw husband’s] plan is sufficient to purge the [former husband] from this Contempt finding.
“Attorneys have 30 days to submit to the Court a determination of the alimony arrearage amount.”
A week later, on August 6, 2014, the trial court entered an order stating:
“[The former husband] having been previously found in contempt for willful refusal to comply with the order of the Court and having failed to purge himself of the contempt. The Court ORDERS
“that a warrant for his arrest be issued and that he be held in the Baldwin County jail until further order of this Court. Upon arrest, [the former husband] may post a cash bond in the amount of $6500.00.”
On August 7, 2014, the former husband filed his notice of appeal.

Discussion

Initially, we note that the former wife has argued that the contempt judgment appealed from is not a final appealable judgment. First, we agree with the former wife that the former husband’s appeal arises out the July 31, 2014, order. The former husband argues that the trial court erred in finding him in contempt despite his asserted inability to pay the moneys awarded to the former wife in the divorce judgment. The trial court made its contempt finding, and rejected the former husband’s defense of inability to pay, in the July 31, 2014, order. In its August 6, 2014, order, the trial court only executed on the July 31, 2014, order upon finding that the former husband had not immediately paid the former wife the periodic alimony he owed. Thus, the appeal relates solely to the matters adjudicated in the July 31, 2014, order.
Second, we conclude that the July 31, 2014, order is sufficiently final to support an appeal. Rule 70A(g), Ala. R. Civ. P., allows for review of civil-contempt adju *25 dications by appeal. An “adjudication” is defined as “[t]he legal process of resolving a dispute; the process of judicially deciding a case.” Black’s Law Dictionary 50 (10th ed. 2014). We have not located any Alabama caselaw explicitly discussing the conditions under which a civil-contempt order may be considered final for the purposes of appeal under Rule 70A(g).
In The Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd., 141 Ohio St.3d 107, 22 N.E.3d 1035 (2014), the Ohio Supreme Court set out an excellent discussion on the topic:
“The contempt sanctions imposed in this case are civil in nature, because the trial court conditioned imposition of the fine on the failure to purge the contempt. Our research reveals that there is a split of authority regarding whether a civil contempt order is a final order for purposes of appellate review.
“Federal courts view civil contempt orders as interlocutory and hold ‘except in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of a civil contempt.’ Fox v. Capital Co., 299 U.S. 105, 107, 57 S.Ct. 57, 81 L.Ed. 67 (1936); see also Cent. States, Southeast & Southwest Areas Health & Welfare Fund v. Lewis; 745 F.3d 283, 285 (7th Cir.2014); United States v. Myers, 593 F.3d 338, 344 (4th Cir.2010); United States v. Conces, 507 F.3d 1028, 1037 (6th Cir.2007), fn. 7. Even if the underlying action has proceeded to a final judgment, an adjudication of civil contempt is not appealable when the contemnor retains the opportunity to purge. Sec. & Exchange Comm. v. Hickey, 322 F.3d 1123, 1127-1128 (9th Cir.2003).
“Some states follow this federal view that a civil contempt order is not immediately appealable, although some permit review through extraordinary writ actions. See, e.g., In re Moroun, 295 Mich.App. 312, 329, 814 N.W.2d 319 (2012); In re Marriage of Crow & Gilmore, 103 S.W.3d 778, 780-781 (Mo. 2003); Von Hake [v. Thomas ], 759 P.2d [1162] at 1167 [ (Utah 1988) ]; Fitch v. Fitch, 298 Minn. 529, 530, 213 N.W.2d 925 (1974); Wagner v. Warnasch, 156 Tex. 334, 339, 295 S.W.2d 890 (1956); Brinkley v. Brinkley, 47 N.Y. 40, 46-47 (1871); see also State v. Arne, 579 N.W.2d 326, 329 (Iowa 1998) (permitting review only by way of a petition for writ of certiorari); Berry v. Maricopa Cty. Superior Court, 163 Ariz. 507, 508, 788 P.2d 1258 (App.1989), citing In re Wright, 36 Ariz. 8, 281 P. 944 (1929) (‘Review of a contempt citation is ... only possible by special action’).... The rationale, as the Supreme Court of Minnesota explained in Semrow v. Semrow, 26 Minn. 9, 10, 46 N.W. 446 (1879), is that if there is an opportunity to purge, the contempt order is conditional; punishment cannot be inflicted without proof that the contemnor failed to comply, and even then the court might not order the sanction into execution.
“Other jurisdictions, however, hold that a civil contempt order is a final appealable order, even if the court conditions the sanction on the failure to purge. See, e.g., McCoy v. McCoy, 55 Va.App. 524, 528, 687 S.E.2d 82 (2010), fn. 2; Anderson Dundee 53, L.L.C. v. Terzakis, 363 Ill.App.3d 145, 154-155, 298 Ill.Dec. 863, 841 N.E.2d 6 (2005); Bryant v. Howard Cty. Dept. of Social Servs. ex rel. Costley, 387 Md. 30, 45, 874 A.2d 457 (2005); Rhoades v. Pryce, 2005 PA Super 162, 874 A.2d 148, ¶ 9; Hamilton Capital Group, Inc. v. Equifax Credit Information Servs., Inc., 266 Ga.App. 1, 2-3, 596 S.E.2d 656 (2004); Hooper v. Rockwell, 334 S.C. 281, 291, *26 513 S.E.2d 358 (1999); Internatl. Paper Co. v. United Paperworkers Internatl. Union, 551 A.2d 1356, 1359 (Me.1988); Di Nofrio v. Di Nofrio, 85 R.I. 21, 26, 125 A.2d 194 (1956); In re Day, 34 Wis. 638, 642 (1874). Courts recognize that once a party is found in contempt and the court chooses a sanction, all that remains is the execution of the sanction, and thus conditions allowing the contem-nor to avoid the sanction do not render the order interlocutory. Rhoades at ¶ 9[, 874 A.2d at 151]; Peet v. Peet, 16 Va.App. 323, 326, 429 S.E.2d 487 (1993).
“This is a matter of first impression for this court. In Liming v. Damos, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, we addressed whether an indigent contemnor subjected to civil contempt for failure to comply with child support obligations had a right to counsel at the purge hearing. In concluding that the contemnor had no right to counsel, we relied on the differences between a contempt hearing and a purge hearing. We explained that the question of contempt is decided at a contempt hearing, where an alleged contemnor ‘will have had the opportunity to defend against the contempt charges and otherwise object to or appeal from a finding of contempt and any purge conditions.’ (Emphasis added.) Id. at ¶ 30[, 133 Ohio St.3d at 518, 979 N.E.2d at 306]. But at a purge hearing, The propriety of the contempt finding or the purge conditions is not in question,’ and the hearing is limited to determining whether the con-temnor complied with conditions imposed for purging contempt. Id.
“Thus, there are separate questions for appellate consideration resulting from the separate judgments of a trial court in these kinds of contempt matters: one, whether at the time of the finding of contempt and the imposition of sentence the trial court considered the actions of the alleged contemnor and followed the law in its findings and sentence, and two, whether at the time of the hearing on compliance with purge conditions the court considered whether the contemnor met the conditions or was prevented from doing so. Accordingly, an alleged contemnor may have the opportunity to appeal once from the finding of contempt and again from execution of sentence for failure to purge, presenting different issues to the appellate court to review.
“We recognize that it is inherently unfair to force a party found in contempt to either comply with a potentially illegal or improper contempt order or submit to a sanction in an effort to obtain appellate review of the order the party seeks to challenge. Complying can create a hardship for some litigants, as in this case, where the trial court ordered Dashing Pacific to make repairs at a cost estimated to be $75,000 in order to purge contempt. But if Dashing Pacific had avoided the sanction by purging the contempt, then it would have rendered its appeal moot. See United States v. Zakharia, 418 Fed.Appx. 414, 425-426 (6th Cir.2011) (citing cases); Cent. Emergency Med. Servs., Inc. v. State, 332 Ark. 592, 594, 966 S.W.2d 257 (1998); Internatl. Paper Co., 551 A.2d at 1361. As one commentator has explained, allowing the immediate appeal of civil contempt orders would ‘prevent the Hob-son’s choice otherwise presented to the contemnor — compliance with an invalid order, or submission to contempt sanctions without achieving appellate review.’ Thomas J. André Jr., The Final Judgment Rule and Party Appeals of Civil Contempt Orders: Time for a Change, 55 N.Y.U.L.Rev. 1041, 1054 (1980).
*27 “In accordance with our analysis in Liming and this reasoning, a court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final appealable order on the issue whether the party is in contempt of court. We further recognize that a contemnor may have an additional appeal on the question whether the purge conditions have been met following execution of sentence on the failure to purge.”
141 Ohio St.3d at 1035, 22 N.E.3d at 1035.
In the present case, the July 31, 2014, order found the former husband in contempt and set purge conditions. Although the trial court requested that the parties submit evidence as to an alimony arrear-age, that outstanding issue did not affect the finality of the contempt finding for appeal purposes under the analysis used in The Docks Venture, L.L.C., which we adopt today. Cf. Ex parte Landry, 117 So.3d 714 (Ala.Civ.App.2013) (considering contempt judgment to be nonfinal because, among other things, it did not adjudicate child-support-arrearage claim). Thus, this court has jurisdiction to address the issues raised in the appeal from the July 31, 2014, order.
In addressing the merits of the appeal, we do not consider any arguments directed at the propriety of the divorce judgment, as amended, which was the subject of the former husband’s first appeal. See McCarron, supra. Because every specific provision of a final judgment entered pursuant to the jurisdiction of the trial court must be followed, an alleged contem-nor cannot defend a contempt petition on the theory that the provision sought to be enforced was entered in error; hence, the correctness of the final judgment sought to be enforced ordinarily is not an issue in a contempt proceeding. See Oregon Educ. Ass’n v. Oregon Taxpayers United, 253 Or.App. 288, 291 P.3d 202 (2012). In this case, the trial court did not stay enforcement of the divorce judgment pending appeal because the former husband did not file a supersedeas bond, so the former husband had to comply with the provisions of the divorce judgment during the appeal period if he had the ability to do so, even if this court ultimately determined that the judgment should be reversed due to legal error. See Kreitzberg v. Kreitzberg, 131 So.3d 612 (Ala.Civ.App.2013).
We do address the contention of the former husband that the trial court erred in holding him in contempt because, he says, he lacked the ability to pay the periodic-alimony and property-settlement obligations imposed on him in the divorce judgment and because the former wife did not prove beyond a reasonable doubt that he could pay the amounts ordered. If the obligor presents evidence indicating that “[his or her] failure to pay ... is due to financial inability, the burden then shifts to the [obligee] to prove beyond a reasonable doubt that the [obligor] is financially able to pay the amount ... ordered.” Carr v. Broyles, 652 So.2d 299, 301-02 (Ala.Civ. App.1994) (emphasis added).
In this case, the divorce judgment ordered the former husband to pay the former wife, within 30 days of the entry of the judgment, as amended, alimony in gross and attorney’s fees of approximately $500,000. In McCarron, supra, this court determined that the former husband did not have the ability to pay that amount because he did not have the funds available to him and because his assets, the largest of which consisted of a minority ownership in a closely held corporation, could not be liquidated or used as collateral for a loan to raise the necessary funds. The evidence adduced at the contempt hearing only reinforced those factual conclusions. The former husband’s banker *28 testified that his bank had rejected the loan application of the former husband because the former husband had insufficient collateral. The former wife presented no evidence from which the trial court could have been convinced beyond a reasonable doubt that, in fact, the former husband could afford to pay the alimony in gross and the attorney’s fees as ordered.[1] Because the facts upon which this court decided that issue have not changed, our determination that the former husband lacked the ability to pay the alimony in gross and the attorney’s fees as ordered in the divorce judgment has become the law of the case. See, e.g., Poole v. Prince, 61 So.3d 258, 273 (Ala.2010). We therefore conclude that the trial court erred in finding the former husband in contempt for failing to pay the alimony in gross and the attorney’s fees awarded to the former wife.
The divorce judgment also ordered the former husband to pay periodic alimony to the former wife in the amount of $10,000 per month. In McCarron, supra, this court held that the former husband could not afford to pay that amount while simultaneously complying with the alimony-in-gross provision and other provisions of the divorce judgment. The facts adduced at the contempt hearing show no material change in the financial circumstances of the former husband. The former wife failed to prove beyond a reasonable doubt “that the [former husband] is financially able to pay the amount ... ordered.” Carr, 652 So.2d at 302 (emphasis added). If the trial court had awarded the former wife only periodic alimony, we may have reached a different conclusion, but it did not, so we must consider all the obligations imposed upon the former husband in the divorce judgment in deciding whether he has the ability to pay. Id. We have located no cases in which this court has determined that a contempt finding should be affirmed because the evidence showed that the obligor could pay part of the amount awarded or that the obligor could pay one of several different awards.
Accordingly, we reverse the judgment of the trial court. In doing so, we do not mean to modify any aspect of our opinion in McCarron. The trial court may still impose a monthly obligation on the former husband that provides for the payment of periodic alimony, alimony in gross, and attorney’s fees so long as that obligation does not cause undue economic hardship on the former husband.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. We note that, in her petition for a rule nisi, the former wife did not seek to enforce the provision of the divorce judgment relating to the award of $400,000, representing her interest in the former’s husband’s minority shares in the corporation; however, at the contempt hearing, the parties presented evidence as to that issue, and the trial court addressed that issue in its final judgment, so we treat the petition as being impliedly amended to include that claim under Rule 15, Ala. R. Civ. P.