*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1112**

In re the Marriage of:
Lian Yang McGaughey, petitioner,
Respondent,

vs.

William Howard Taft McGaughey, Jr.,
Appellant.

**Filed December 28, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-FA-11-2008

Lian Y. McGaughey, Herndon, Virginia (pro se respondent)

William H.T. McGaughey, Jr., Minneapolis, Minnesota (pro se appellant)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant William McGaughey challenges the district court's denial of his motion to modify or to terminate spousal maintenance and the district court's grant of respondent Lian McGaughey's motion to increase spousal maintenance. Because we conclude that the

district court did not abuse its broad discretion in denying William McGaughey's motion and granting Lian McGaughey's motion, we affirm.

## FACTS

This case arises from the modification of a spousal-maintenance award. Appellant William McGaughey and respondent Lian McGaughey married in January 2000, in Beijing, China. At the time, William was 58 years old and Lian was 43 years old.[1] After the parties married, Lian, a Chinese citizen, moved to the United States with her daughter. William and Lian share no biological children.

Lian is now 59 years old. After moving to the United States, she worked for three years and permanently resigned from employment after a work injury in 2006. She receives approximately $473 per month from a Chinese retirement fund. Lian suffers from cancer and diabetes; because she has only Chinese health insurance, she must frequently travel to China for medical treatment. Lian owns a nonmarital apartment in Beijing, where she stays when she returns to China for medical treatment. While in the United States, she lives with her daughter in Virginia.

William is now 74 years old. Before the marriage, he worked in an accounting-related job and ran a now-defunct publishing company. To prepare for retirement, he bought two rental properties, which he continues to rent: a four plex and a nine plex on Glenwood Avenue in Minneapolis. William also owns nonmarital property in Bayfield, Wisconsin, and Milford, Pennsylvania.

---

[1] We typically do not refer to parties by their first names. Because the parties share a last name, we do so here to avoid confusion.

During the marriage, the couple purchased two additional properties in Minneapolis. They fell into debt while married. In 2003, they borrowed $100,000 by mortgaging William's nonmarital four plex. William later consolidated several debts into a loan secured by a mortgage on a marital duplex. In 2010, they refinanced the four plex.

Lian petitioned for divorce in March 2011. At the time of dissolution, a $173,000 encumbrance remained on one of the parties' marital properties, and an $84,000 encumbrance remained on William's nonmarital four plex. In addition, the couple had over $70,000 in marital unsecured debt through several banks and credit lines.

After trial, the district court awarded the two later-purchased properties, which it deemed to be the only marital real estate, to William. The district court also apportioned the encumbrances remaining on the duplex and the four plex to William. Noting William's dissipation of marital assets, it additionally apportioned approximately $65,000 of the parties' marital unsecured debt to him. The district court apportioned approximately $8,000 in debt to Lian, including her own medical bills. It also exercised its discretion to award Lian permanent spousal maintenance of $500 per month and $50,000 of William's nonmarital assets.

In the ensuing appeal by William, this court affirmed the district court's debt apportionment and its spousal-maintenance award. It reversed the district court's $50,000 award of William's nonmarital assets to Lian, however. *See McGaughey v. McGaughey*, No. A13-0320, 2014 WL 103380 (Minn. App. Jan. 13, 2014), *review denied* (Minn. Mar. 18, 2014).

3

In September 2014, William moved to modify spousal maintenance, arguing that he had substantially increased needs because of a $3,418 monthly debt-service payment, which he undertook to manage his dissolution-apportioned debt. In response, Lian moved to increase her spousal maintenance by $100 per month, alleging that her needs had increased because of new medical treatments and medication excluded from her Chinese insurance coverage.

The district court denied William's motion, concluding that William had not successfully alleged a substantial increase in need since the dissolution decree. Relying on this court's decision in *Fulmer v. Fulmer*, 594 N.W.2d 210 (Minn. App. 1999), the district court concluded that it could not deduct the debt-service payment from William's net income in calculating spousal maintenance. After finding support in the record for Lian's argument that her needs had increased by approximately twenty percent since trial, the district court granted her motion to increase spousal maintenance.

William appeals.

## D E C I S I O N

Upon a showing of substantially increased need of an obligor or an obligee, the district court may modify a spousal-maintenance award. Minn. Stat. § 518A.39, subd. 2(a) (2014). Modification of maintenance should be made cautiously and "only upon clear proof of facts showing that a substantial change in circumstances renders modification equitable." *Wiese v. Wiese*, 295 N.W.2d 371, 372 (Minn. 1980).

"A party moving to modify an award of maintenance bears the burden of showing a substantial change of circumstances" since the original award. *Youker v. Youker*, 661

4

N.W.2d 266, 269 (Minn. App. 2003), *review denied* (Minn. Aug. 5, 2003); *see also* Minn. Stat. § 518A.39, subd. 2(a). After carrying this initial burden, "[t]he moving party must then demonstrate that these changed circumstances render the original award unreasonable and unfair." *Youker*, 661 N.W.2d at 269.

A district court acts as the finder of fact and is in the best position to judge the credibility of the evidence before it. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). "[T]he party challenging the [district court's factual] findings must show that despite viewing that evidence in the light most favorable to the trial court's findings . . . , the record still requires the definite and firm conviction that a mistake was made." *Id.* at 474. We will not disturb a district court's findings of fact unless they are "manifestly and palpably contrary to the evidence as a whole." *In re S.G.*, 828 N.W.2d 118, 127 (Minn. 2013) (quotations omitted).

## I.     William's Motion to Modify or to Terminate Spousal Maintenance

The district court found that William had not successfully alleged an increased financial need that would justify any downward modification of maintenance. Despite having found that William had not discharged the initial burden of showing a substantial change in circumstances, because William was self-represented, the district court nevertheless considered whether, under his current circumstances, the maintenance award was unreasonable and unfair. Concluding that the award was neither, the district court denied William's motion.

William challenges the district court's denial of his motion to terminate his permanent spousal-maintenance obligation, contending that the district court did not

5

account for his increased need arising from a contractual monthly payment to service his unsecured debt. He additionally maintains that the district court made improper credibility determinations regarding his lack of veracity and that this court should disregard them. His arguments are unpersuasive.

William bore the burden of showing substantially increased need. *See* Minn. Stat. § 518A.39, subd. 2(a); *Youker*, 661 N.W.2d at 269. William's statement of monthly expenses, however, showed no change since the time of the decree. Instead of relying on a change in monthly expenses to show increased need, William submitted documentation establishing his $3,418 contractual monthly payment to Credit Advisors, a credit-debt service provider. The "Budget Income Statement" document that he used to secure this debt-service contract listed his net pay as $7,800 per month and his monthly expenses— including his $500 spousal-maintenance obligation—as $4,287. Thus, his own figures showed that, not only had his monthly needs not increased, but that he also had $3,513 remaining with which to make the monthly debt-service payment and to fulfill his spousal-maintenance obligation.

Though this calculation could have concluded the district court's inquiry, the district court further considered William's additional assertions regarding his current financial situation. It noted William's inclusion of unexplained business debt as part of his financial picture, his failure to collect on an outstanding loan to his former spouse, his questionable financial decisions to continue servicing unlucrative rental property, the $50,000 returned to him as a result of the earlier appeal, and his choice to pay down the mortgage on his

6

nonmarital four plex by $30,000 since the decree—thereby increasing its equity—while his unsecured debt mounted.

The district court concluded that, given these considerations, William could easily cease operating his losing endeavors or sell certain unlucrative real estate and invest the proceeds to generate additional income. *See Rask v. Rask*, 445 N.W.2d 849, 853–54 (Minn. App. 1989) (considering interest on prudent investments within spousal-maintenance analysis). It further reasoned that it was not required to consider debt-service payments on dissolution-apportioned debt in determining whether to modify spousal maintenance. *See Fulmer*, 594 N.W.2d at 214 (concluding that "the trial court's refusal to consider indebtedness appellant incurred to satisfy a stipulated property award, when the court determined income available for support and maintenance obligations," was "consistent both with the principles of equity and with caselaw"). The district court ultimately concluded that it would not be unfair or unreasonable to require William to pay the relatively modest maintenance award to Lian, who continued to battle cancer. Given the district court's thorough assessment of the evidence, we agree that William has neither discharged his burden of showing substantially increased need nor shown that the current award is either unreasonable or unfair.

Finally, the extent of the district court's review belies William's contention that the district court improperly found that he lacked veracity. The district court carefully assessed the strength of the evidence presented by both parties. Its thorough analysis of William's submissions and its detailed response to each of his assertions show that it did not give short shrift to William's contentions. Instead, given the conflicting evidence that William

7

submitted, the district court appropriately discounted the validity of certain assertions that William made.

Because the district court did not abuse its broad discretion, it properly denied William's motion to modify or to terminate spousal maintenance.[2]

## II.    Grant of Lian's Motion to Increase Spousal Maintenance

Regarding Lian's responsive motion to modify spousal maintenance, the district court found that her expenses had increased by approximately twenty percent since the dissolution decree.  Having exercised its discretion in the original decree to split the economic hardship between the parties—both of whom alleged insufficient income at the time to cover their respective expenses—the district court found that an increase of $100 per month would not unreasonably affect its previous hardship determination.  Based on its assessment of the parties' financial situations, the district court granted Lian's motion.

William contends that this court should reverse the district court's grant of the $100 monthly increase in spousal maintenance.  His argument is meritless.

Lian asserted substantially increased needs based on her deteriorating health and monthly out-of-pocket medical costs.  She presented a detailed picture of her current income and expenses, producing documentation of her income and each monthly expense

_____

[2] William additionally argues that the district court should have granted him an evidentiary hearing on his modification motion and that it improperly imputed to him a decrease in total debt in its assessment of his financial status.  The modification statute states, however, that the district court "need not hold an evidentiary hearing on a motion for modification of maintenance"; to deny a hearing was therefore well within the district court's discretion. Minn. Stat. § 518A.39 2(g) (2014).  Moreover, the district court's characterization of the decrease in William's total debt was soundly based on the evidence, including William's own financial submissions. Accordingly, William's additional arguments fail.

8

that she reported.  The district court found that her budget reflected the frugal standard of living that the parties experienced during their marriage and that the record supported her increased-needs claim.  Our review of the record shows that this finding is supported.  Accordingly, Lian successfully discharged her burden of showing a substantial change in circumstances.

Moreover, Lian's submissions to the district court showed that her monthly expenses resulted in a $384 monthly deficit, which her meager income did not cover.  The district court concluded that Lian's change in circumstances rendered modification equitable.  Sufficient evidence supports this conclusion.

William does not assert that the district court mistakenly calculated Lian's budget, and nothing in the record suggests that the district court erred in its findings.  Given the district court's broad discretion to modify the award and the support in the record for Lian's substantial increase in need and her monthly deficit, we conclude that the district court properly exercised its discretion by increasing her spousal-maintenance award by $100 per month.

**Affirmed.**