In re the Marriage of Barbara B.
ERICKSON, Petitioner,
Respondent,

v.

Stephen B. ERICKSON, Appellant.

No. CX–88–1478.

Court of Appeals of Minnesota.

Feb. 7, 1989.
Review Granted April 26, 1989.

Mary Alice C. Richardson, Richardson Law Office, Rochester, for respondent.

L.D. Downing, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for appellant.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

On remand from this court and based upon subsequent motions from both parties in post-dissolution modification proceedings, Stephen Erickson appeals the reclassification of maintenance as child support and the denial of modification. Barbara Erickson McCall seeks review on the children's educational fund payments, maintenance/support arrearages, and repayment of excess maintenance. We affirm.

## FACTS

The parties' marriage was dissolved in 1984 pursuant to the terms of a marital termination agreement. Each was represented by counsel. The parties retain joint legal custody of their four minor children. Barbara has physical custody subject to Stephen's visitation rights.

Under the terms of the decree, adopted verbatim from the marital termination agreement, Stephen was to pay Barbara both maintenance and child support as follows:

3. That [Stephen] shall pay to [Barbara] as child support the sum of One Thousand ($1,000.00) Dollars per year per child. Child support shall be payable in monthly installments on the 1st day of each month, commencing on April 1, 1984. * * *

That as and for additional child support, [Stephen] shall pay the First National Bank college loan according to its prevailing terms, commencing April 1, 1984.

\* \* \* \* \* \*

4. That [Stephen] shall pay to [Barbara] as maintenance, the sum of fifty-five per cent (55%) of [Stephen's] gross income, but the amount of child support being paid shall always be a credit against the maintenance payment due, no matter what the amount of maintenance is under the terms of this paragraph, and the maintenance shall be payable in monthly installments on the first day of each month commencing April 1, 1984, and continuing until January 1, 1988, when the maintenance shall be reduced to forty per cent (40%) of [Stephen's] gross income and shall continue at that per cent until the oldest of the parties' minor children graduates from high school. That upon the occurrence of each of the following events, the maintenance shall be reduced by 5%: (a) each child's graduation from high school, (b) each child's reaching the age of 22 years or graduating from college, whichever event occurs first. It is further agreed and understood that the percentage of [Stephen's] salary shall be determined on

July 1st of each year commencing in 1984 and that the adjustment in maintenance shall be reflected in the August 1st maintenance payment of each year.

In April 1987 Barbara moved the trial court for an order finding Stephen in contempt of court for his failure to comply with the terms of the original judgment and decree regarding maintenance and an educational loan for the children. Stephen moved for an order denying Barbara's motion, awarding him judgment for maintenance overpaid to Barbara, eliminating maintenance, and setting child support in compliance with the Minnesota child support guidelines.

The trial court found Stephen in contempt of court for failing to pay Barbara 55 percent of his income from all sources. The court also found that Stephen had complied with the terms of the original judgment and decree regarding the children's educational loan. All other motions for relief were denied.

Stephen appealed from the trial court's orders. This court, in an unpublished opinion, (1) vacated the trial court's finding of contempt; (2) held that the trial court erred in its interpretation of the loan obligation and remanded the matter for the trial court "to fashion an appropriate and equitable payment arrangement for Stephen to contribute to a college fund for the children;" and (3) remanded Stephen's modification request for additional findings. *Erickson v. Erickson,* No. CX–87–1647 (Minn.Ct. App. Dec. 15, 1987) [1987 WL 27047].

Both parties brought additional motions. Barbara moved for (1) a change of residence to the state of Nebraska for the four minor children; (2) $968 in maintenance arrearages for 1985 and 1986, and $1,260.48 for 1987, plus 1988 maintenance arrearages; and (3) attorney fees. Stephen moved for an order (1) allowing the change of residency; (2) requiring Barbara to pay all transportation visitation expenses; (3) terminating maintenance because of Barbara's recent remarriage and modifying child support to comply with the guidelines; (4) refunding $6,829.17 in excess support/maintenance paid to Barbara since 1984; (5) setting the children's college education fund payments at $100 monthly without retroactive penalty; and (6) attorney fees.

The trial court heard all motions and the matters on remand and issued detailed findings. The court (1) granted the change of residency and ordered Barbara to pay certain visitation transportation costs; (2) neither granted nor denied Stephen's motion to terminate maintenance, but instead construed the maintenance provisions of the decree as child support and denied modification of child support; Stephen appeals this determination; (3) ordered Stephen to pay $250 monthly to the Erickson Educational Trust for the children's college education; Barbara seeks review, arguing for $400 monthly and arrearages; (4) ordered Stephen to pay $1,174.25 in arrearages; Barbara seeks review, arguing that the trial court's forgiveness of additional arrearages is arbitrary and without evidentiary support; (5) ordered Barbara to repay Stephen $6,829.17 in excess payments through a $200 monthly offset; Barbara seeks review, arguing res judicata; and (6) ordered each party to pay his own attorney fees.

## ISSUES

1. Did the trial court abuse its discretion by failing to terminate maintenance payments upon Barbara's remarriage?

2. Did the trial court abuse its discretion by finding no substantial change of circumstances requiring child support modification?

3. Did the trial court abuse its discretion by ordering Stephen to pay $250 monthly to the children's educational trust?

4. Did the trial court abuse its discretion by failing to order payment of 1987 and 1988 maintenance arrearages?

5. Is the issue of overpayment of maintenance res judicata, and did the trial court err by ordering Barbara to repay maintenance overpayments?

## DISCUSSION

Modifying a spousal maintenance award is a discretionary power to be exer-

cised cautiously and only upon a clear showing that a substantial change of circumstances renders modification equitable. *Bissell v. Bissell*, 291 Minn. 348, 351, 191 N.W.2d 425, 427 (1971). Modifying a child support award lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of that discretion only when it finds a "clearly erroneous conclusion that is against logic and the facts on record." *Moylan v. Moylan*, 384 N.W.2d 859, 864 (1986) (citations omitted). This discretion must be exercised within the limits set out by the legislature. *Id.*

## I

■ Stephen argues, based on statute and case law, that Barbara's remarriage terminates his obligation to pay future maintenance because the decree does not expressly provide otherwise. Stephen argues that the trial court abused its discretion by refusing to terminate maintenance.

Minn.Stat. § 518.64, subd. 3 (1988), provides:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Neither the decree nor the parties' marital termination agreement specifies that maintenance will continue beyond the wife's remarriage. Under the statute, it would appear that maintenance should be terminated. However, the trial court concluded that the decree's maintenance clause was actually intended by both parties to provide child support and was characterized as maintenance for tax purposes. *Landwehr v. Landwehr*, 380 N.W.2d 136, 139 (Minn.Ct.App.1985) (payment characterized as alimony was actually intended to be part of property settlement and must be construed according to its characteristics and intent). *Landwehr* has been followed in subsequent court of appeals cases. *See Kiffer v. Kiffer*, 410 N.W.2d 454, 457 (Minn.Ct.App.1987) (alimony as property settlement); *Nelson v. Quade*, 413 N.W.2d

824, 827 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Dec. 22, 1987) (maintenance as property settlement).

Stephen admits that these terms enabled most of the child support to be included with the substantial spousal maintenance and thus to be tax deductible. The trial court found the maintenance clause to be ambiguous and construed it as a child support clause. In so doing, the trial court relied on other decree provisions to interpret the ambiguous provision, showing: (1) "maintenance" was tied to the children's lifetime events; and (2) the child support decree clause provided only minimal support and was to be credited against the "maintenance." The court concluded that Barbara's remarriage provided no basis for statutory termination of Stephen's "child support classified as maintenance for tax purposes."

Stephen argues there is a "maintenance component" to paragraph 4 of the decree. We disagree. The "maintenance component" was already eliminated by operation of the decree at the time of Barbara's remarriage, as the trial court correctly found. Paragraph 4 originally awarded Barbara 55 percent of Stephen's gross income from April 1, 1984, until January 1, 1988. The record discloses a retraining period for Barbara. After January 1, 1988, "maintenance" was reduced to 40 percent of his income. This remaining amount is reduced only by events applicable to the children, and "maintenance" terminates when the youngest child reaches age 22 or graduates from college, whichever first occurs. We conclude that any maintenance component was eliminated by the reduction from 55 to 40 percent on January 1, 1988, prior to Barbara's May 1988 remarriage. The remaining 40 percent constitutes child support. The trial court did not err in construing the provision as child support and refusing to apply the automatic maintenance termination provision of Minn.Stat. § 518.64, subd. 3.

## II

■ Stephen argues that child support modification is warranted due to a substan-

tial change of circumstances caused by (1) Barbara's remarriage; (2) her increased earnings; (3) her husband's ability to contribute to the household expenses; and (4) the tax consequences of changing "maintenance" to child support.

Minn.Stat. § 518.64, subd. 2 (Supp.1987), provides:

> The terms of a decree respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased needs of a party; (3) receipt of assistance under sections 256.72 to 256.87; or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair. On a motion for modifications of maintenance, the court shall apply in addition to all other relevant factors, the factors for an award of maintenance under section 518.552 that exist at the time of the motion. On a motion for modification of support, the court shall take into consideration the needs of the children and shall not consider the financial circumstances of each party's spouse, if any.

Stephen's modification demand was previously heard and denied by the trial court. This court remanded for additional findings following *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn.1986), and *Olson v. Olson*, 399 N.W.2d 660, 664 (Minn.Ct.App.1987). *See Erickson v. Erickson*, No. CX–87–1647 (Minn.Ct.App. Dec. 15, 1987). On remand, the trial court made additional findings and again denied modification, concluding that the original support obligation was not unreasonable or unfair. The trial court made specific findings on Stephen's income and needs, Barbara's income and needs, and the children's needs.

The trial court has discretion in deciding whether circumstances have changed sufficiently to necessitate modifying the child support provisions of a divorce decree, and its decision will not be reversed absent a clear abuse of that discretion. *Bouman v. Reiter*, 297 Minn. 494, 494, 210 N.W.2d 215, 215 (1973). In view of the detailed findings, we hold that the trial court did not abuse its discretion.

## III

The original decree ordered Stephen to pay a $50,000 "Crown loan" borrowed from a bank to fund a trust. This was a tax-shifting device established during the parties' marriage to fund the children's future college educations. Stephen paid $472 monthly on the loan. When the tax laws changed after the parties' dissolution, Stephen unilaterally ordered the bank to repay the loan from the principal of the trust, thereby eliminating the educational fund. Subsequently, Stephen began paying $400 monthly into an account established for the children's college education.

Barbara moved the trial court for an order finding Stephen in contempt for failing to pay arrearages totaling $2,304 due to the educational fund from August 1, 1984, through April 1, 1987. Without findings, the trial court denied Barbara's motion by order dated July 23, 1987. On appeal this court held:

> The decree ordered Stephen to make the payments on the loan in order to provide for the children's education, and he eventually took the children's college money to pay off the loan. This left the children without a college fund, which is against the intent of the decree. Furthermore, Stephen is currently "voluntarily" paying $400 per month into a college fund for the children. Thus it appears he has the resources to continue such an obligation. We hold the trial court erred in its interpretation of the loan obligation and remand the matter for the trial court to fashion an appropriate and equitable payment arrangement for Stephen to contribute to a college fund for the children.

*Erickson*, No. CX–87–1647 (Minn.Ct.App. Dec. 15, 1987).

On remand the trial court ordered Stephen to "pay to the trustees of the Erickson Educational Trust the sum of $250 per month." No payment of arrearages was ordered.

Barbara contends that Stephen should pay at least $400 monthly to the educational trust plus arrearages to give effect to the parties' negotiations and intent of the marital termination agreement. Stephen argues that the trial court's reduction to $250 monthly takes into account changes in tax treatment upon which the $472 payments were based and is not an abuse of discretion.

Although a motion for modification is within the sound and broad discretion of the trial court, the Minnesota Supreme Court has repeatedly instructed trial courts to modify awards cautiously and only upon a clear showing that a substantial change of circumstances has rendered modification equitable. *James v. James,* 397 N.W.2d 587, 590 (Minn.Ct.App.1986) (citing *Wiese v. Wiese,* 295 N.W.2d 371, 372 (Minn.1980); *Ramsay v. Ramsay,* 305 Minn. 321, 322, 233 N.W.2d 729, 731 (1975)).

The trial court found a substantial change of circumstances caused by the tax law changes, rendering modification equitable. There is no showing of prejudice to the children at this time: (1) none is yet attending college; (2) the cost is unknown; (3) future modification proceedings are available should circumstances warrant; and (4) Stephen has previously cooperated in providing funds for college. We hold these factors adequate to justify the modification.

Nor do we believe the trial court erred in failing to order payment of arrearages. The original decree was worded in such a way that Stephen was obligated only to pay the "Crown loan." When the loan was repaid, Stephen was in compliance with the specific language of the order, though the fund was no longer in existence. This court remanded the matter to the trial court to fashion an appropriate and equitable payment arrangement for him to contribute to a college fund. The trial court ordered Stephen's future obligation, but in the interim Stephen had no obligation to pay any educational fund amounts. The trial court did not err, because no arrearages can be ascribed to an existing fund and the adequacy of the present fund has not yet been tested.

## IV

The trial court ordered Stephen to pay $1,174.25 in maintenance arrearages. Barbara contends the trial court abused its discretion by forgiving arrearages. Her argument is not supported by the record. The trial court ordered Stephen to pay 55 percent of his income from all sources and ordered payment of arrearages in the sum of $1,174.25 derived from four specific additional income items.

Barbara provides no evidence of additional arrearages. Other than the $1,174.25 arrearages, there is no finding that Stephen did not comply with the terms of the original decree to adjust maintenance based on the percentage of his salary determined on July 1 of each year. The trial court reviewed Stephen's tax returns and W–2 statements, and it cannot be said the trial court forgave arrearages.

The trial court declined to rule on allegations of 1988 arrearages; we affirm. The question is premature.

## V

■ The trial court found that Stephen overpaid $6,829.17 in support from July 1984 through June 1987 and ordered repayment by an offset of $200 monthly. Barbara argues that the issue of overpayment was finally disposed of in this court's previous decision and that principles of res judicata bar relitigation.

The trial court originally denied Stephen's motion on overpayment in its 1987 order denying "all other motions for relief." Stephen appealed and claimed error in the trial court's failure to credit him for the overpayment. The trial court, however, merely denied relief without any findings. On appeal this court did not specifically address the overpayment issue.

Stephen argues that the remand on the issue of modification encompasses the overpayment issue. Minn.Stat. § 518.64 authorizes modifying "the amount of maintenance or support money, *and the payment*

*of it."* Minn.Stat. § 518.64, subd. 1 (1988) (emphasis supplied). Thus, this court's remand for additional findings on Stephen's motion for modification required consideration of his claim of overpayment. The issue was not barred by the principles of res judicata; the trial court did not err in finding overpayment and ordering repayment.

## DECISION

The trial court did not err in construing the provision denominated "maintenance" as child support and refusing to terminate it upon Barbara's remarriage. Nor did the court abuse its discretion in (1) finding no substantial change of circumstances requiring modification of child support; (2) ordering Stephen to pay $250 monthly to the Erickson children's education trust; (3) ordering payment of 1987 maintenance arrearages and declining to address 1988 maintenance arrearages; and (4) ordering repayment of maintenance overpayments.

AFFIRMED.